IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Mustafa Waffi, ) | | |
|     Petitioner, ) | | |
| ) | | |
| v. ) | 1:07cv742 (LMB/BRP) | |
| ) | | |
| Mary Loiselle, et al., ) | | |
|     Respondents. ) | | |

## MEMORANDUM OPINION

Mustafa Waffi, a native of Afghanistan currently detained by the Bureau of Immigration and Customs Enforcement ("BICE") and housed at the Hampton Roads Regional Jail, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. On September 17, 2007, respondents filed their opposition to the petition. On September 27, 2007, petitioner filed his traverse. For the reasons stated below, the petition will be granted in part.

I.

Petitioner, an Afghani national born in Kabul, Afghanistan, was admitted to the United States as a lawful permanent resident on September 20, 2001. Pet., ¶ 7; Pet. Ex. 2 at 1. Since immigrating to the United States, petitioner has resided with his family in Springfield, Virginia. Pet., ¶¶ 7, 14. On August 1, 2005, petitioner engaged in oral sex acts with a minor. See Pet., ¶ 15; Pet. Ex. 5 at 1; Resp. Exs. 6, 13. On March 15, 2006, petitioner pled guilty in the Circuit Court of Fairfax County, Virginia to the felony offense of taking indecent liberties with a child, in violation of section 18.2-370 of the Code of Virginia. Pet., ¶ 15; Pet. Exs. 5-6; Resp. Ex. 1. On June 12, 2006, the Fairfax Circuit Court sentenced petitioner to a term of imprisonment of two years but suspended the sentence and imposed two years of supervised probation. Pet., ¶ 16; Pet. Ex. 5; Resp. Ex. 2. On July 17,

2006, the BICE detained petitioner. Pet., ¶ 17; Pet. Ex. 7. On July 18, 2006, the BICE issued a Notice to Appear, charging that petitioner was subject to removal from the United States pursuant to section 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(i), as an alien convicted of a crime involving moral turpitude, committed within five years after admission to the United States, for which a sentence of one year or longer may be imposed. Pet., ¶ 18; Resp. Ex. 3. The BICE also charged that petitioner's conviction rendered him removable from the United States under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony, as defined in section 101(a)(43)(A) of the INA, 8 U.S.C. § 1101(a)(43). Pet., ¶ 18; Resp. Ex. 3.

During removal proceedings before an immigration judge ("IJ"), petitioner requested to be released on bond in a motion filed August 4, 2006. Resp. Ex. 4. On August 16, 2006, the IJ found that petitioner did not qualify to be released on bond because of his conviction for an aggravated felony. Resp. Ex. 5 at 11; Pet. Ex. 2 at 2. Petitioner also applied for withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and under Article 3 of the Convention Against Torture ("CAT"), see 8 C.F.R. § 1208.16(c). Pet. Ex. 2 at 2. Between September, 2006 and February, 2007, petitioner requested and was granted four continuances of the hearing on the merits of his requests for withholding of removal. Resp. Exs. 7-13. In the meantime, on November 3, 2006, the IJ issued an interim order in which he found that petitioner's conviction was not a particularly serious crime under Yousefi v. U.S. Immigration & Naturalization Serv., 260 F.3d 318 (4th Cir. 2001) and that, as a result, petitioner was eligible to apply for withholding of removal under both the INA and the CAT. Pet., ¶ 19; Resp. Ex. 14; see Pet. Ex. 2 at 2. On March 9, 2007, the IJ denied petitioner's Motion to Dismiss the aggravated felony ground of removability and found

petitioner subject to removal on both grounds charged by the BICE in the Notice to Appear. Pet., ¶ 20; Resp. Ex. 15; see Pet. Ex. 2 at 2. By written opinion dated May 18, 2007, the IJ found that petitioner was removable as charged but granted petitioner withholding from removal to Afghanistan under the INA and the CAT. Pet., ¶ 21; Pet. Ex. 2 at 15; Resp. Ex. 16. Petitioner appealed to the Board of Immigration Appeals ("BIA"), challenging the IJ's ruling that he was subject to removal as the result of his conviction of an aggravated felony. Pet., ¶ 22; Resp. Ex. 18. The BICE appealed to the BIA, challenging the IJ's rulings that petitioner was eligible for withholding of removal and that he met his burden of proof for withholding of removal under the INA and the CAT. Pet., ¶ 22; Pet. Ex. 8; Resp. Ex. 17. Both appeals are currently pending before the BIA.

On July 30, 2007, petitioner filed the instant petition for a writ of habeas corpus, raising three claims. In claim 1, petitioner argues that he is not subject to the so-called "mandatory detention" provision at section 236(c)(1) of the INA, 8 U.S.C. § 1226(c)(1), because the plain language of the statute applies only to those aliens who have been detained by the BICE immediately after their release from a period of incarceration. In claim 2, petitioner asserts that the due process clause of the Fifth Amendment requires this Court to interpret 236(c)(1) of the INA as authorizing "no-bond detention" only for a reasonable time and when removal is reasonably foreseeable in order to avoid violating his substantive due process rights. In claim 3, petitioner asserts that the due process clause of the Fifth Amendment requires this Court to interpret section 236(c)(1) of the INA as authorizing "no-bond detention" only for a reasonable time and when removal is reasonably foreseeable in order to avoid violating his procedural due process rights.

Respondents counter that the "gravamen" of the instant petition is that the IJ erred in applying the INA's "mandatory detention provision" at section 236(c), 8 U.S.C. § 1226(c), to deny

3

petitioner release on bond. According to respondents, section 236(e) of the INA, 8 U.S.C. § 1226(e), prohibits this Court from exercising jurisdiction under 28 U.S.C. § 2241 to review the IJ's application of section 236(c) to deny bond to petitioner. Moreover, respondents argue that even if this Court could exercise jurisdiction over petitioner's claims, petitioner's interpretation of section 236(c) would render as superfluous other portions of section 236(c), would lead to absurd results, and is contrary to the construction given that section by the BIA. Finally, respondents contend that petitioner's pre-removal detention is constitutionally permissible.

## II.

Re-drafted in 1996, section 236 of the INA governs the Attorney General's authority to detain an alien during the pendency of removal proceedings. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), enacted at Division C of the Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 303(a), 110 Stat. 3009-585-86 (Sept. 30, 1996) (codified at 8 U.S.C. § 1226). Section 236(c) provides that the Attorney General is required to take into custody any alien who is deportable by reason of having been convicted of an aggravated felony or a crime involving moral turpitude, committed (in the case of an alien admitted for lawful permanent residence) within ten years of the date of admission to the United States "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation ...." 8 U.S.C. § 1226(c)(1)(B)-(C) (emphasis added). Pursuant to section 236(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

4

## III.

Analysis of the jurisdictional question begins properly with the understanding that implied repeals of the habeas jurisdiction of federal courts are disfavored. Ex parte Yerger, 75 U.S. (8 Wall.) 85, 102, 105 (1868). In Felker v. Turpin, the Supreme Court applied Yerger and held that a portion of Title I of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(b)(3)(E), which prevents the Supreme Court from reviewing, by appeal or writ of certiorari, an order from the court of appeals denying a state habeas petitioner leave to file a second or successive habeas petition, did not prevent it from exercising jurisdiction over original habeas petitions. 518 U.S. 651, 660-61 (1996). In determining that § 2244(b)(3)(E) did not deprive it of original habeas jurisdiction, the Supreme Court noted that Title I of the AEDPA lacked any reference to its authority to entertain, as an original matter, petitions for a writ of habeas corpus. Id. at 661 ("Although § 2244(b)(3)(E) precludes [the Supreme Court] from reviewing, by appeal or petition for certiorari, a judgment on an application for leave to file a second habeas petition in district court, it makes no mention of [the Supreme Court's] authority to hear habeas petitions filed as original matters in [the Supreme] Court."). Accordingly, the Court declined, as it did so in Yerger with respect to a predecessor to 28 U.S.C. § 2241, to effect a repeal "by implication" of its jurisdiction under 28 U.S.C. § 2241. Id.

In Immigration & Naturalization Serv. v. St. Cyr, the Supreme Court reaffirmed the role that a writ of habeas corpus has played in the review of the legality of executive detention. 533 U.S. 289, 305 (2001) (citing Felker, 518 U.S. at 663; Swain v. Pressley, 430 U.S. 372, 380 n.13 (1977); id. at 385-86 (Burger, C.J., concurring)). In considering a jurisdictional challenge based on provisions of the AEDPA and the IIRIRA to the district court's power to entertain petitioner's habeas claims, the

Supreme Court noted that the respondent was required to "overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a <u>clear statement of congressional intent to repeal habeas jurisdiction</u>." Id. at 298 (emphasis added). "Implications from statutory text or legislative history," the Court noted, "are not sufficient to repeal habeas jurisdiction," and "Congress must [instead] articulate specific and unambiguous statutory directives to effect a repeal." Id. at 299 (citing Yerger, 8 Wall. at 105). Upon review of the relevant provisions, the Court concluded that the "lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas" meant that habeas jurisdiction under § 2241 was not repealed by the AEDPA and the IIRIRA. Id. at 314.

Finally, in its recent decision in Demore v. Kim, the Supreme Court held that it has habeas jurisdiction over claims involving challenges to detention under section 236(c) of the INA. 538 U.S. 510, 517 (2003) (noting that constitutional challenges to section 236(c) of the INA are not barred by section 236(e), as the latter subsection contains "no explicit provision barring habeas review").[1] The Court reaffirmed its requirement for a "particularly clear" statement of Congress' intent "where a provision precluding review is claimed to bar habeas review[.]" Id. Although the petitioner in

---

[1] The Demore Court noted, however, that the scope of a district court's jurisdiction does not extend to the review of the Attorney General's discretionary decisions. Demore, 528 U.S. at 517. But, as Judge Cacheris has cogently pointed out, section 236 of the INA differentiates between action the Attorney General <u>must</u> take with respect to an alien, see 8 U.S.C. § 1226(c)(1) and (d), and action that he <u>may</u> take with respect to that alien, see 8 U.S.C. § 1226(a), (b), and (c)(2). Aguilar v. Lewis, 50 F.Supp.2d 539, 543 (E.D.Va. 1999) ("[A]fter reviewing § 236 as a whole, it is clear that the section differentiates between what the Attorney General is required to do, and what the Attorney General may opt to do. The language in some subsections provides that the Attorney General 'may' take actions, whereas the language in other subsections provides that the Attorney General 'shall' take certain action."). Like the petitioner in Aguilar, the instant petitioner is being detained pursuant to the "mandatory" provisions at section 236(c)(1). Accordingly, Demore does not stand in the way of the Court's exercise of jurisdiction in this case.

6

Demore raised solely a due process challenge to his detention during removal proceedings, it is well-established that district courts also retain jurisdiction to consider an alien's habeas challenge to the statutory framework mandating his detention during removal proceedings. 28 U.S.C. § 2241(c)(3) (noting that the writ of habeas corpus may extend to those held in custody in violation of the Constitution "or laws or treaties of the United States"); see Hatami v. Chertoff, 467 F.Supp.2d 637, 640-41 (E.D.Va. 2006) (noting that under Demore, an alien's challenge to the legislation establishing the framework for decisions regarding detention or release may be reviewable); Quezada-Bucio v. Ridge, 317 F.Supp.2d 1221, 1227 (W.D.Wash. 2004) ("[T]he Supreme Court's decision in Demore v. Kim ... made clear that the [INA] does not bar habeas review of statutory or constitutional challenges to detention."); Alwaday v. Beebe, 43 F.Supp.2d 1130, 1132 (D.Or. 1999) ("This court has jurisdiction to grant habeas relief if petitioner is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations omitted); see also Rivera v. Demore, No. C. 99-3042 TEH, 1999 WL 521177, at * 3 (N.D. Cal. July 13, 1999) (noting that section 236(e) does not bar judicial review "of claims reaching the constitutionality of section 236(c) and its temporal reach") (emphasis added); Velasquez v. Reno, 37 F.Supp.2d 663, 668-69 (D.N.J. 1999) (holding that section 236(e) did not deprive the court of jurisdiction to review petitioner's statutory challenges to his detention without bond).

Section 236(e) of the INA does not contain a particularly clear and express statement that this Court's jurisdiction to review petitioner's habeas challenges to his mandatory detention has been modified or eliminated. See Demore, 538 U.S. at 517; St. Cyr, 533 U.S. at 298-99.[2] At no point

---

[2] The Court recognizes that Galvez v. Lewis reached a different conclusion, holding that section 236(e) "divests the Court of authority to review the decision of an immigration judge under section 236(c) regarding detention, release or the grant, revocation or denial of bond or parole." 56

does this subsection reference petitions for a writ of habeas corpus or 28 U.S.C. § 2241. See Felker, 518 U.S. 660-61. Accordingly, as this subsection lacks a clear and express statement of Congress' intent either to modify or repeal the jurisdiction of district courts to consider petitioner's claims on habeas, the Court will not find that the language "no court may set aside" somehow implies a waiver of jurisdiction under § 2241. See Yerger, 8 Wall. at 105 ("Repeals by implication are not favored."); Sandoval v. Reno, 166 F.3d 225, 232 (3d Cir. 1999) (noting that district courts "should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute" and that "only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice").

Congress enacted the present version of section 236(e), 8 U.S.C. § 1226(e), after the Supreme Court's decision in Felker; thus, Congress was presumably aware that if it wished to modify or repeal habeas jurisdiction, it must do so explicitly. See, e.g., Cannon v. Univ. of Chicago, 441 U.S. 677, 699 (1979) (noting that it is appropriate for courts to presume that Congress was familiar with Supreme Court precedent and "that it expected its enactment[s] to be interpreted in conformity with" such precedent). But as no such explicit statement is present in section 236(e),[3] this Court finds that

---

F.Supp.2d 637, 641 (E.D.Va. 1999) (citing Edwards v. Blackman, 48 F.Supp.2d 477, 478 (M.D.Pa. 1999)). However, in light of the Supreme Court's decision in Demore and the reasoning in Hatami, 467 F.Supp.2d at 640-41, that challenges to the statutory framework establishing mandatory detention of certain aliens during removal proceeding may be subject to review, the holding in Galvez is not persuasive.

[3] For further evidence that section 236(e) contains no explicit statement divesting the district courts of jurisdiction to consider habeas claims such as those raised by the petitioner, the Court turns to section 236A of the INA, 8 U.S.C. § 1226A, which Congress added with the passage of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, § 412(a), 115 Stat. 272, 351 (codified at 8 U.S.C. § 1226A). Subsection (a) provides that the Attorney General must take into custody those aliens engaged in terrorist or other activity endangering the security of the United States. 8 U.S.C.

it retains habeas jurisdiction under 28 U.S.C. § 2241 to consider petitioner's claims.

## IV.

Having determined that section 236(e) of the INA does not limit this Court's jurisdiction to review the merits of petitioner's claims, the Court turns now to the issue of the temporal reach of section 236(c)'s requirement of mandatory detention for those aliens subject to section 236(c)(1)(B) and (C). Put another way, the question before the Court is whether section 236(c)'s requirement of mandatory detention, which applies "when the alien is released," applies to an alien such as petitioner, who, although charged with removability for conviction of a crime covered by sections 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (conviction of an aggravated felony), and 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i) (conviction of a crime involving moral turpitude committed within five years after the date of admission), was not taken into immigration custody until well over a month after his release.[4]

---

§ 1226A(a)(1), (3). Pursuant to subsection (b)(1), judicial review of the Attorney General's decision to detain these aliens is available "exclusively" in habeas corpus proceedings consistent with the requirements of this subsection. Id. § 1226A(b)(1). Moreover, subsection (b)(3) effectively modifies 28 U.S.C. § 2253, the statute governing habeas appeals, by making an appeal to the United States Court of Appeals for the District of Columbia Circuit the exclusive appellate forum in which such an alien may raise a habeas challenge to the legality of his detention. Id. § 1226A(b)(3). The enactment of section 236A makes clear that Congress knows how to make explicit modifications to a district or circuit court's ability to entertain an alien's habeas petition. Such explicit modifications, however, are not present in section 236(e).

[4] Both parties appear to proceed on the theory that petitioner was in fact "released" from custody for his offense. However, it is not entirely clear that this is the case, as petitioner was never incarcerated for his criminal conviction in the first place. See Aguilar, 50 F.Supp.2d at 544 (raising a question as to whether an alien petitioner, who was convicted but given a suspended sentence and placed on probation, was ever "released"); Alwaday, 43 F.Supp.2d at 1133 (concluding that the alien petitioner, who was convicted but given a one-year suspended sentence and placed on probation, was never "released"); Pastor-Camarena v. Smith, 977 F.Supp. 1415, 1417 (W.D.Wash. 1997) ("The context and structure of the statute make it clear that the 'when the alien is released' language ... must apply to aliens who are being <u>released from incarceration on the underlying offense</u>.")

9

The BIA has determined that section 236(c)'s requirement of mandatory detention applies to aliens even if they are not taken into BICE custody immediately upon their release from state custody. Matter of Rojas, 23 I. & N. Dec. 117, 127 (B.I.A. 2001). According to the BIA, the clause "'when released' ... is no more a part of the description of an alien who is subject to detention than are the other concluding clauses[,] ... [which] simply make it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges." Id. at 121 (emphasis in original). Finding that the statute "focused on the removal of criminal aliens in general, not just those coming into [BICE] custody 'when ... released' from criminal incarceration[,]" the BIA held that the language "when released" addressed itself "to the statutory command that the 'Attorney General shall take into custody' certain categories of aliens [i.e., those aliens delineated at section 236(c)(1)(A)-(D)], rather than to the descriptions of those categories." Id. at 121, 122. However, it is the federal judiciary, and not the BIA, that has ultimate authority to interpret the reach of section 236(c). See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984).

When reviewing an administrative agency's interpretation of a statute, the Court is to apply well-established cannons of statutory construction. Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987). The language of the statute at issue must be given its "ordinary" meaning. Id. (citing Immigration & Naturalization Serv. v. Phinpathya, 464 U.S. 183, 189 (1984)). Where the language of the statute is clear, the inquiry is ended, and this Court "must give effect to

---

(emphasis added). However, assuming, as the parties appear to do, that petitioner was "released" from state custody upon the trial judge's suspension of his prison term, see Resp. to Pet. For a Writ of Habeas Corpus at 12 n.11, the question of the temporal reach of section 236(c)(1), namely, whether its requirement of mandatory detention applies to an alien who has been released before being taken into immigration custody, is still before the Court.

10

the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843. If the language regarding intent is ambiguous, the Court must defer to the agency's reasonable interpretation of the statute, however, administrative constructions which are "contrary to clear congressional intent" must be rejected. Id. at n.9.

Petitioner argues that, when read in the context of the entirety of section 236(c), the plain meaning of the clause "when the alien is released" is that the requirement of mandatory detention applies only if the alien is detained by the BICE immediately after his release from state custody. Pet. Mem. in Supp. of Pet. for Habeas Corpus at 11. According to petitioner, Congress could have easily used the phrase "after" the alien is released (instead of "when" the alien is released) if it intended that all aliens convicted of the covered crimes be detained without bond no matter when they are taken into the BICE's custody. Id.

Although the Fourth Circuit has not resolved the merits of petitioner's argument, it is not unsupported. In Pastor-Camarena v. Smith, the district court examined the phrase "when the alien is released" in the context of a so-called "transition rule" case. 977 F.Supp. 1415, 1417-18 (W.D.Wash. 1997).[5] The court determined that the mandatory detention provision at section 303(b)(3)(A) of the IIRIRA (now replaced by section 236(c)(1) of the INA) did not apply to aliens who had been taken into immigration custody years after they had been released from state custody.

---

[5] Congress enacted the IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009, on September 30, 1996. The act included "Transition Period Custody Rules," which suspended the operation of section 236(c)(1) from October 9, 1996 until October 9, 1998, after which time the permanent rule, codified at section 236(c)(1) of the INA, took effect. See IIRIRA §§ 303(a), 303(b)(3). The transitional rule at issue in Pastor-Camarena provides that the Attorney General "shall take into custody any alien [who has committed a specified criminal offense] when the alien is released, without regard to whether the alien may be arrested or imprisoned again for the same offense." IIRIRA § 303(b)(3)(A). The current version of section 236(c)(1) of the INA and the transitional rule at § 303(b)(3)(A) of the IIRIRA, however, contain the same clause "when the alien is released."

Id. at 1418 ("[I]t was arbitrary and capricious for respondents to interpret the language of IIRIRA § 303(b)(3) to include aliens, like petitioner, who were released from incarceration many years before coming into ... custody ... for deportation proceedings."). "The content and structure of the statute make it clear that the 'when the alien is released' language of IIRIRA, § 303(b)(3)(A), must apply to aliens <u>who are being released</u> from incarceration on the underlying offense." Id. at 1417 (emphasis added). In <u>Alikhani v. Fasano</u>, 70 F.Supp.2d 1124, 1130 (S.D.Cal. 1999), the district court explained that because the term "when" is defined as "just after the moment that," it was clear that the mandatory detention language of section 236(c) applied only to those aliens detained in immigration custody "just after the moment that" they are released from state custody (citing Webster's Third New International Dictionary 2602 (3d ed. 1976)). The court went on to explain that if Congress had intended for section 236(c) to apply retroactively to those criminals released before its effective date, it could have used "explicit retroactivity language or required that covered aliens be taken into custody <u>regardless of when the alien is released</u> or <u>at anytime after the alien is released</u>." Id. (internal quotations omitted) (emphasis added); <u>see also</u> <u>Velasquez</u>, 37 F.Supp.2d at 670-71. Similarly, in <u>Alwaday</u>, the district court opined that had Congress intended for section 236(c) to apply retroactively to criminals released from custody before its effective date, it could have used the phrases "regardless of when the alien is released" or "at any time after the alien is released." 43 F.Supp.2d at 1133. Although the prospective or retroactive application of section 236(c) of the INA is not before the Court, as the district court noted in <u>Quezada-Bucio</u>, the language used in the transitional rule "is exactly the same as that used in the permanent rule [i.e., section 236(c) of the INA]." 317 F.Supp.2d at 1230. "Thus, in accordance with the rules of statutory construction, the language in question should be interpreted the same way." Id. (citing <u>K Mart Corp.</u>

v. Cartier, Inc., 486 U.S. 281, 291 (1988)). "That interpretation would follow the same logic as the Supreme Court's long-standing rule that identical words used in different parts of the statute must have the same meaning." Id. (citing Sale v. Haitian Centers Council, Inc., 509 U.S. 155, 203 n.12 (1993)).

The Court finds that petitioner's construction of section 236(c) is correct. The term "when" includes the characteristic of "immediacy," referring in its primary conjunctive sense, to action or activity occurring "at the time that" or "as soon as" other action has ceased or begun. See 20 The Oxford English Dictionary 209 (2d ed. 1989); The American Heritage Dictionary of the English Language (4th ed. 2000). The Court is not persuaded by respondents' argument that the term "when," as used in section 236(c), is ambiguous because it can "also be defined in a conditional sense, i.e., 'in the event that.'" Resp. to Pet. For Writ of Habeas Corpus at 11. Such a construction appears more properly placed upon the term "whenever" or perhaps the phrase "in the event that," however, neither that term nor that phrase is used in section 236(c). Additionally, it would be contrary to the plain language of section 236(c)'s command that the Attorney General take into immigration custody certain criminal aliens "when" those aliens are released from state custody to include those aliens who had "already" been released from state custody. See Aguilar, 50 F.Supp.2d at 544. Moreover, statutory language should not be construed in a way that renders a term surplusage. Quezada-Bucio, 317 F.Supp.2d at 1228 (citing United States v. Menasche, 348 U.S. 528 (1955)). If this Court were to agree with the BIA that the clause "when the alien is released" does not describe the class of aliens who are to be detained by the Attorney General, it would doom that clause to removable surplusage. When the BIA argues that section 236(c)(1) could be read simply as requiring the Attorney General to take into immigration custody any alien [meeting any one of the

requirements at § 236(c)(1)(A)-(D)] without regard to the timing of that alien's release from custody, 23 I. & N. Dec. at 121, the phrase "when the alien is released" is rendered a nullity. Therefore, the Court rejects the BIA's construction of the phrase.

Accordingly, the Court finds that the mandatory detention statute, section 236(c)(1) of the INA, does not apply to an alien such as petitioner, who has been taken into immigration custody well over a month after his release from state custody. The Court finds further that petitioner should be provided with an individualized bond hearing, pursuant to section 236(a) of the INA. Accordingly, the petition for a writ of habeas corpus will be granted in part, and this matter will be remanded to the United States Immigration Court in Arlington, Virginia for the purpose of providing petitioner with an individualized bond hearing within thirty days of the date of this Order. The Immigration Judge will be ordered to determine whether, and under what conditions, petitioner may be released from custody during the pendency of his removal proceedings.

V.

For the foregoing reasons, Waffi's petition for a writ of habeas corpus will be granted in part. An appropriate Order shall issue.

Entered this  19th  day of  December  2007.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

14